The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG
Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 13 |
| JOHN ED AVERY & FLORINE LUVENIA AVERY, | ) |
| | ) CASE NO. 09-61931 |
| | ) |
| Debtors | ) JUDGE RUSS KENDIG |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| | ) |

On July 23, 2009, debtors filed a motion to determine the value of debtors' residence and avoid the second mortgage held by creditor Leroy Write. Leroy White filed a response to the motion on August 11, 2009. The matter came before the Court for an evidentiary hearing on November 17, 2009. Douglas L. Thrush, counsel for debtor, and Leroy White, *pro se* creditor, attended the hearing. This matter is now before the Court for decision.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND ON LIEN STRIPPING

Upon the filing of a bankruptcy, 11 U.S.C. § 506 bifurcates undersecured secured claims into secured and unsecured components, thus allowing the debtor to pay the unsecured component at a steep discount. However, section 506 is subject to 11 U.S.C 1322(b)(2), which states that a Chapter 13 bankruptcy plan may modify claims other than a *secured* claim "secured only by a security interest in real property that is the debtor's personal residence . . . ." Nobleman v. American Savings Bank (In re Nobleman), 508 U.S. 324 (1993).

A second mortgage is considered a *secured* claim if any part of the second mortgage secures economic value – that is, if the sum of all higher-priority liens is less than the value of the real estate. Id. Conversely, a second mortgage is considered an unsecured claim if no part of the second mortgage secures economic value – that is, if the sum of all higher-priority liens, including the first mortgage, equal or exceed the value of the real estate. Lane v. Western Interstate Bancorp (In re Lane), 290 F.3d 663, 664–65 (2002). Thus, stripping a second mortgage is an all-or-nothing affair, and a small difference in the valuation of a debtor's real estate can have a large impact.

As a result, the moment in time at which a piece of real estate should be valued can be controversial. This is especially true when the collateral is rapidly appreciating or depreciating, or, as in this case, when a debtor makes repairs to his collateral after the petition date. Courts have not yet reached a consensus on the proper valuation date of property when a debtor attempts to strip off a wholly unsecured lien. *Compare* Crain v. PSB Lending Corp. (In re Crain), 243 B.R. 75, (Bank. C.D. Cal. 1999) (effective date of Chapter 13 plan) *with* Dean v. LaPlaya Investments, Inc. (In re Dean) 319 B.R. 474 (2005) (petition date). The bankruptcy code provides little guidance. Section 506(a) states that property value "shall be determined in light of the purpose of the valuation and use of such property. . . ." As such, section 506 does not link the date for the valuation of property to the date of a particular event in the bankruptcy process.

In this case, the Court finds that the petition date is the most appropriate date for valuation of the debtors' real property. The petition date is the "watershed date of a bankruptcy proceeding." LaPlaya, 319 B.R. at 478. As of this date, creditors' rights are fixed, the bankruptcy estate is created, and the value of the debtor's exemptions are determined. Id. Thus, the petition date should be used as the valuation date for real property, at least when property has been used as a residence continuously since the petition date.[1]

## EVIDENCE SUBMITTED BY THE PARITES

### A. Facts Not in Dispute

Debtors are fee simple owners of a residence located at 494 Beech Dr., Mansfield, OH

---

[1] A different time of valuation might be used if the property changed in use after the petition date. For example, a different valuation date might be appropriate if the debtors decided to reside in a property they had previously rented. *See* LaPlaya, 319 B.R. at 478.

44906, identified as parcel number 0372812502000. The debtors' residence is 40 years old. It is a split-level home with 4 bedrooms, 3 bathrooms, a partial basement, and a 3 car attached garage. The residence is located in the Ontario school district. The county auditor has estimated the market value of the house at $188,200. However, both parties' experts testified that the county auditor's valuation is unreliable.

On November 7, 2005, the debtors purchased their residence from Leroy White for the price of $210,000. To purchase the home, debtors took out a first and second mortgage. The first mortgage is held by U.S. Bank and the second mortgage was seller-financed by Leroy White. At hearing, the parties stipulated that the first mortgage had a balance of $163,000 for the purpose of the debtors' motion.

### B. Evidence Submitted by Creditor Leroy White

Mr. White asserts that the debtors' residence has a market value of $172,000. This valuation is based on a appraisal conducted by Cynthia L. Bias, which was submitted into evidence at the hearing. Ms. Bias is a certified residential appraiser and has been conducting appraisals since 1995.

Ms. Bias's appraisal was conducted on August 7, 2009. The appraisal states that the debtor's residence has 2,719 square feet. Ms. Bias testified that she measured every room in the house to arrive at this figure. Ms. Bias's appraisal states that the debtors' residence is in "good" condition based in part on her finding that there were no deferred maintenance issues at the time of the appraisal. Exterior photographs of the debtors' residence suggest that the house has average "curb appeal" for a 40-year-old house in a middle-class residential neighborhood. Interior photographs show that the house is clean and well-furnished.

At hearing, Ms. Bias testified that she uses a market-based approach when appraising residential property. She first finds recent sales of homes with similar marketability (known as "comparables"). She then adjusts the sale price of these homes to account for differences between the comparables and the subject property. Finally, she averages the adjusted selling prices of the comparables to estimate the market value of the subject property.

Ms. Bias's appraisal relies on three comparables. The first comparable is located at 1955 Banyon Lane, Mansfield, OH 44904 (hereinafter "the Banyon property"), and, after adjustments, indicates a value of $164,500. The Banyon property is located 3.08 miles southeast of the debtors' residence. A street map of Mansfield suggest that the house is in a different residential neighborhood than the debtors' residence. In addition to being located far apart, the properties are not connected by residential streets. The Banyon property does not appear to be a split-level home but has curb appeal comparable to the debtors' residence.

The second comparable is located at 715 Walnut Dr., Mansfield, OH 44904 (hereinafter "the Walnut property"), and, after adjustments, indicates a value of $172,400. The Walnut property is located 4.47 miles to the southeast of the debtors' residence. Like the Banyon property, the Walnut property appears to be in a different neighborhood than the debtors'

residence. In addition to being located very far apart, the properties are not connected by residential streets. Furthermore, the Walnut property is located in a different school district than the debtors' residence. It does not appear to be a split-level home and has greater curb appeal than the debtors' residence.

The third comparable is located at 1270 Cedarbrook Ct., Mansfield, OH 44906 (hereinafter "the Cedarbrook property"), and, after adjustments, indicates a value of $173,000. The Cedarbrook property is located 1.99 miles to the southeast of the subject property. The Cedarbrook property appears to be in a different neighborhood than the debtors' residence. A map of Mansfield suggests that the Cedarbrook property is part of (or at least close to) the Royal Oaks subdivision. The debtors' expert testified that the Royal Oaks subdivision is much more upscale than the debtors' neighborhood. Furthermore, the Cedarbrook property is located in a different school district than the debtors' residence. The Cedarbrook property does not appear to be a split-level home and has greater curb appeal than the debtors' residence.

### C. Evidence Submitted by the Debtors

Debtors John Ed Avery and Florine Luvenia Avery assert that their residence has a value of $145,000 based on an appraisal conducted by Bill Stepp for Chapter 13 trustee Toby L. Rosen. Mr. Stepp's appraisal was entered into evidence at the hearing. Mr. Stepp is not a certifed residential appraiser but has over 20 years of residential appraisal experience, has conducted appraisals for the Chapter 13 trustee for the last 13 years, and is an auctioneer and real estate broker.

At hearing, Mr. Stepp testified about trends in the housing market in the Mansfield, OH area. He testified that the average home has declined in value from $109,000 in 2005 to $79,000 in 2009, which is a 28% drop.

Mr. Stepp also discussed his appraisal of the debtors' residence, which was conducted on May 27, 2009. Mr. Stepp's appraisal indicates that the debtors' residence has 2,673 square feet. According to the appraisal, Mr. Stepp's testimony, and Mr. Avery's testimony, the roof of the debtors' residence was in need of repair at the time of Mr. Stepp's appraisal. Mr. Avery also testified that the ceiling in the master bedroom had been damaged by the leaking roof.

Mr. Stepp's appraisal includes four comparables. The first comparable is located at 1940 Magnolia Dr., Mansfield, OH 44903 (hereinafter "the Magnolia property") and recently sold for $155,000. The Magnolia property is arguably in the same neighborhood as the debtors' residence. The two properties do not appear to be connected by residential streets. However, the Magnolia property is located one mile to the southwest of the debtors' residence and is located in the Ontario School district. The Magnolia property has 2,245 square feet. It has one less bedroom than the debtors' residence, one-half less bath, and a larger garage. It is a split-level home and has curb appeal similar to the debtors' residence.

The second comparable is located at 150 Clare Rd., Mansfield, OH 44906 (hereinafter "the 150 Clare Rd. property") and recently sold for $133,000. The 150 Clare Rd. property has

2,292 square feet and the same number of bedrooms and bathrooms as the debtors' property. It is a split-level home and has curb appeal similar to the debtors' residence. The 150 Clare Rd. property is arguably in the same neighborhood as the debtors' residence. The two properties do not appear to be connected by residential streets and Mr. Stepp testified that the Clare Rd. properties were 3 to 4 miles to the northwest of the debtors' residence. However, the properties appear considerably closer on a map. Furthermore, the 150 Clare Rd. property is in the Ontario school district.

The third comparable is located at 560 S. Home Rd., Ontario, OH 44906 (hereinafter "the Home Rd. property") and recently sold for $163,000. The Home Rd. property is clearly in the same neighborhood as the debtors' residence. The home is located one-half mile to the east and is connected to the debtors' residence by residential streets. Furthermore, the Home Rd. property is located in the same school district as the debtors' residence. The Home Rd. property has 2,268 square feet and has one-half less bathrooms than the debtors' residence. It is approximately 10 years newer. It is a split-level home and has curb appeal similar to the debtors' residence.

The fourth comparable is located at 160 Clare Rd., Mansfield, OH 44906 (hereinafter "the 160 Claire Rd. property") and recently sold for $140,000. The 160 Clare Rd. property has 2,268 square feet. It has one-half less bathroom than the debtors' residence. It is a split-level home and has curb appeal similar to the debtors' residence. The 160 Clare Rd. property is adjacent to the 150 Clare Rd. property.

## ANALYSIS

The Court found the testimony of both Mr. Avery and Mr. White to be credible. Furthermore, the Court found both parties' expert witnesses to be well-qualified to render opinions concerning the value of the debtors' residence. As such, the Court bases its valuation decision on the quality of comparables used in the parties' appraisals.

The Court finds that the comparables in Mr. Stepp's appraisal are superior to the comparables in Ms. Bias's appraisal for five reasons. First, each of Mr. Stepp's comparables are of a split-level design, while none of Ms. Bias's comparables closely resemble the debtors' residence. Second, each of the Mr. Stepp's comparables are fairly close to the debtors' residence, while Ms. Bias's closest comparable is two miles away. Third, the Mr. Stepp's comparables are distributed around the debtors' residence, while all of Ms. Bias's comparables are to the southeast. Fourth, at least one of Ms. Bias's comparables appears to be in a subdivision, which is clearly not part of the debtors' neighborhood. Fifth and finally, all of Mr. Stepp's comparables are in the same school district as the debtors' residence, while all of Ms. Bias's comparables are all located in a different school district. Thus, the Court finds Mr. Stepp's comparables to be more compelling.

Nonetheless, the Court does not adopt the debtors' proposed value without some scrutiny. The Court notes that Mr. Stepp's appraisal does not employ a transparent methodology for making adjustments to the selling price of comparables for such factors as condition, number of rooms, and square footage. When valuing the debtors' residence, the Court would expect an

appraiser to make an upward adjustment to the value of the debtors' residence based on the fact that it has approximately 500 more square feet than any of Mr. Stepp's comparables and a downward adjustment for the damage to the roof of the debtors' residence at the date of the petition. An appraiser might also consider the fact that local property values have declined by an average of 28%.

Taking these factors into account, the Court sets the value of the debtors' residence located at 494 Beech Dr., Mansfield, OH 44906 at $152,000. This amount is less than the amount of the first mortgage. Accordingly, the Court grants debtors' motion to determine value and avoid the second mortgage held by Leroy White.

An order will be issued simultaneously with this opinion.

# # #

**Service List:**

John Ed Avery
494 Beech Dr
Mansfield, OH 44906

Florine Luvenia Avery
494 Beech Dr
Mansfield, OH 44906

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

Douglas L Thrush
13 Park Ave W
#314
Mansfield, OH 44902-1714

Leroy A. White
1434 TR 13
Jeromesville, OH 44840